IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| JAMES ADEYEMI, | * |
| Plaintiff, | * |
| v. | *     Civil No. ELH-19-3207 |
| DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES, | * |
| Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

In this employment discrimination case, the self-represented plaintiff, James Adeyemi, who is deaf, filed a "Complaint of Defamation and Retaliation" against his former employer, the Maryland Department of Public Safety and Correctional Services ("DPSCS"). ECF 1 ("Complaint"). The Complaint, which is accompanied by 29 exhibits, seems to assert two claims against defendant DPSCS: defamation, under Maryland law, and retaliation, under the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"). ECF 1 at 2. Adeyemi seeks "compulsory damage and [recovery for] financial loss." *Id.*

Although the Complaint is difficult to decipher, it appears that plaintiff's retaliation claim is predicated on his non-selection for a job position with DPSCS. *See* ADA, Title V, 42 U.S.C. § 12203(a).[1] In particular, plaintiff alleges that DPSCS retaliated against him after he complained about being discriminated against during the hiring process. And, he alleges that DPSCS retaliated

---

[1] Significantly, the Complaint does *not* include a claim of disability discrimination under Title I of the ADA.

against him by refusing to verify his prior employment with DPSCS for prospective employers. ECF 1 at 14.

Defendant has moved to dismiss the Complaint for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1) or, in the alternative, for summary judgment, pursuant to Fed. R. Civ. P. 56. ECF 12. The motion is support by a memorandum (ECF 12-1) (collectively, the "Motion") and thirteen exhibits.  According to DPSCS, plaintiff's ADA claim is barred by the State's entitlement to immunity under the Eleventh Amendment to the Constitution. ECF 21-1 at 8-11. As to the defamation claim, DPSCS contends that plaintiff has failed to comply with the requirements of the Maryland Tort Claims Act ("MTCA"), Md. Code (2014 Repl. Vol., 2018 Supp.), §§ 12-101 *et seq.* of the State Government Article ("S.G.").  *Id.* at 12-15.  Alternatively, defendant urges the Court to decline to exercise supplemental jurisdiction with regard to the State law defamation claim. *Id.* at 11-12.

Adeyemi opposes the Motion (ECF 15) and has submitted two additional exhibits. Defendant has not replied and the time to do so has expired.

No hearing is necessary to resolve the Motion.  *See* Loc. R. 105.6. For the reasons that follow, I shall grant the Motion.

## I.    Factual and Procedural Background[2]

Plaintiff was a contract employee with DPSCS.  On April 4, 2014, Adeyemi entered into an agreement with DPSCS's Police and Correctional Training Commissions ("PCTC") to begin work as an "IT Programmer Analyst Lead/Advanced." ECF 1 at 3; ECF 12-3 (Employment

---

[2] As discussed, *infra*, given the posture of this case, I must assume the truth of the facts alleged by Adeyemi in the Complaint.

Contract). Plaintiff continued working for PCTC until he resigned on November 17, 2015. ECF 1 at 3.[3] Plaintiff claims that he resigned because he was discriminated against for being deaf. *Id.*

On January 13, 2017, DPSCS posted a job vacancy announcement for "Administrator VI: Technical Services Administrator" at PCTC. ECF 1 at 4; *see* ECF 12-8 (Job Posting). Plaintiff applied for this position and was notified on January 23, 2017, that he was selected for an interview. *See* ECF 12-9 (Interview Notification). But, Adeyemi complains that during the interview for this position he was not given "a paper of questions for [the] interview" and he "noticed the interpreter translated very late," which made him suspect "that the interpreter might not be certified." ECF 1 at 4.

Several months later, on May 11, 2017, plaintiff was notified that he was not selected for the position. *Id.*; *see* ECF 12-10 (Rejection Letter). Adeyemi claims that the recruiter told him that the decision was based on the interview scores rather than the individual's educational background or work experience. ECF 1 at 4.

Thereafter, on July 10, 2017, plaintiff contacted the Executive Director of the Office of Equal Opportunity ("OEO") at DPSCS to complain that he was discriminated against during the interview and recruitment process for the Technical Services Administrator position. ECF 1 at 5; *see* ECF 12-11 (Email from Adeyemi to DPSCS). By letter of the same date, the Executive Director of DPSCS responded to Adeyemi's complaint. *See* ECF 1-4. The letter summarized plaintiff's stated complaints: "[Y]ou stated that you were discriminated against because your education was not taken into consideration when another candidate was selected [and you] alleged that the selection of the other candidate was only based on the oral interview for which you were

---

[3] In its Motion, defendant includes many factual assertions that are not included in the Complaint. These facts are not properly considered at this juncture. But, the date that plaintiff resigned from his position is not material to the issues here.

substantially limited based on the fact that you are deaf and the sign language interpreter that assisted you during the interview was not certified…." *Id.* at 1. In response to those complaints, the letter explained that the interpreter was "certified" and a college degree "was not a requirement in order to qualify for the position," so education did not have to be taken into consideration. *Id.* at 1-2. Further, the letter advised Adeyemi of his right to file a complaint of discrimination with the Maryland Commission on Civil Rights and the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 2.

The following day, plaintiff contacted OEO again, stating that he was "afraid of applying for any job at DPSCS" and he was "tired of everyone get[ting] away with hurting [his] job opportunit[ies]" and "abus[ing] [him] at work." ECF 12-13 at 1. But, he said that he was still "willing to go through" with an interview that DPSCS had previously offered him for another IT programmer position. *Id.*[4]

Thereafter, throughout 2018, plaintiff applied for numerous positions at DPSCS, as well as the Maryland Office of the Comptroller, and Anne Arundel County Department of Social Services. *See, e.g.*, ECF 1-7; ECF 1-11; ECF 1-17. According to Adeyemi, he was not selected for these positions because his DPSCS employment references "refus[ed] to verify" his past employment as part of their retaliation against him. ECF 1 at 14.

In June 2019, plaintiff filed a Charge of Discrimination with the EEOC against DPSCS, alleging retaliation between November 2018 and March 2019. *See* ECF 1-25. In the Charge, Adeyemi stated, *id.* at 1: "I was previously employed by [DPSCS]. I previously filed complaints of discrimination against [DPSCS]. Since in or about November 2018, I have been aware that Respondent has either failed to respond to request for references from prospective employers or

---

[4] It is not entirely clear whether plaintiff interviewed for this position.

provided unfavorable references." Further, he stated, *id.*: "I believe that I have been discriminated against in retaliation for engaging in protected activity…."

## II.     Legal Standard[5]

With respect to the ADA, defendant has moved to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. DPSCS contends that plaintiff's ADA claim is barred by sovereign immunity. And, DPSCS claims that the State law defamation claim is subject to dismissal for failure to comply with the MTCA. Alternatively, defendant urges the Court to decline to exercise supplemental jurisdiction as to the State law claim.

District courts of the United States are courts of limited jurisdiction; they possess "'only that power authorized by Constitution and statute.'"  *Gunn v. Minton*, 586 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *see Home Depot U.S.A., Inc. v. Jackson*, ___ U.S. ___, 139 S. Ct. 1743, 1746 (2019); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).  Simply put, if Congress or the Constitution "has not empowered the federal judiciary to hear a matter, then the case must be dismissed."  *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 432 (4th Cir. 2014); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("'Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'") (citation omitted).

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to challenge the court's subject matter jurisdiction with respect to the plaintiff's suit.  Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject

---

[5] Because I will grant defendant's Motion under Fed. R. Civ. P. 12(b)(1), I need not address Rule 56. Moreover, defendant does not appear to make any arguments under Rule 56. *See* ECF 12-1. And, as to the defamation claim, I address supplemental jurisdiction, *infra*.

matter jurisdiction.  *See Demetres v. E. W. Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also The Piney Run Preservation Ass'n v. Cty. Comm'rs of Carroll Cty.*, 523 F.3d 453, 459 (4th Cir. 2008); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  However, a court should grant a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) "'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'"  *B.F. Perkins*, 166 F.3d at 647 (citation omitted).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge or a factual challenge.  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009); *accord Hutton v. Nat'l Bd. of Exam'rs Inc.*, 892 F.3d 613, 620-21 (4th Cir. 2018).  In a facial challenge, "the defendant must show that a complaint fails to allege facts upon which subject-matter jurisdiction can be predicated."  *Hutton*, 892 F.3d at 621 n.7 (citing *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017)); *see also Kerns*, 585 F.3d at 192.  Alternatively, in a factual challenge, "the defendant maintains that the jurisdictional allegations of the complaint are not true."  *Hutton*, 892 F.3d at 621 n.7 (citing *Beck*, 848 F.3d at 270).  In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Beck*, 848 F.3d at 270; *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 333 (4th Cir. 2014); *Evans*, 166 F.3d at 647.

Sovereign immunity is "a weighty principle, foundational to our constitutional system." *Cunningham v. Lester*, 990 F.3d 361, 365 (4th Cir. 2021).  The Fourth Circuit has made clear that the defense of sovereign immunity is a jurisdictional bar, explaining that "'sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.'"  *Cunningham*

*v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (citation omitted), *cert. denied*, ___ U.S. ___, 139 S. Ct. 417 (2018).  Notably, "the burden of proof falls to an entity seeking immunity as an arm of the state, even though a plaintiff generally bears the burden to prove subject matter jurisdiction." *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019) (citing *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014)).

Defendant raises a facial challenge to the Court's subject matter jurisdiction, asserting that the doctrine of sovereign immunity forecloses plaintiff's ADA claim.  ECF 12-1 at 8-10; *see Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (observing that "'sovereign immunity deprives federal courts of jurisdiction to hear claims'") (citation omitted), *cert. denied*, ___ U.S. ___, 139 S. Ct. (2018).  Thus, it must show that the Complaint "fails to allege facts upon which subject-matter jurisdiction can be predicated." *Hutton*, 892 F.3d at 621 n.7; *see Kerns*, 585 F.3d at 192.

### III.    Discussion

### A.  The ADA and Sovereign Immunity
### 1.

The ADA was enacted in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(1), and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." *Id.* § 12101(b)(2).  The ADA contains five titles:  Title I, Employment; Title II, Public Services; Title III, Public Accommodations; Title IV, Telecommunications; and Title V, Miscellaneous Provisions.

Title I of the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of

employment." 42 U.S.C. § 12112(a); *see also Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014) ("The ADA makes it unlawful for covered employers to 'discriminate against a qualified individual on the basis of disability.'") A "qualified individual" is defined as a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Unlawful discrimination under Title I of the ADA "can include the failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . .'" *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 344 (4th Cir. 2013) (quoting § 12112(b)(5)(A)). Moreover, "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability" may qualify as "discrimination against a qualified individual on the basis of disability." 42 U.S.C. § 12112(b)(5)(B). In addition, the ADA bars the discharge of a qualified employee because he is disabled. *Summers*, 740 F.3d at 328.

Also of relevance here, Title V states, in part: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). In other words, Title V protects individuals who are retaliated against for exercising their rights under Title I, II, or III of the ADA.

Title V does not have its own remedial scheme. *See* 42 U.S.C. § 12203(c); *G. v. Fay Sch.*, 931 F.3d 1, 10–11 (1st Cir. 2019). Thus, a Title V claim must be predicated on another section of the ADA. *See Melerski v. Virginia Dep't of Behavioral Health & Developmental Servs.*, No. 4:15-CV-00039, 2016 WL 154144, at *3 (W.D. Va. Jan. 11, 2016) ("A Title V retaliation action must

8

rest upon a previous Title's subject.") (citing *Collazo-Rosado v. Univ. of P.R.*, 775 F. Supp. 2d 376, 384 (D.P.R. 2011)).

Plaintiff does not cite the relevant title of the ADA in his Complaint. But, because he brings a retaliation claim, it arises under Title V. *See* 42 U.S.C. 12203(a). And, it is predicated on Title I, because he alleges that he was retaliated against for complaining about employment discrimination. *See* 42 U.S.C. § 12112.

## 2.

As noted, DPSCS maintains that plaintiff's ADA claim is barred by the Eleventh Amendment to the Constitution. The Eleventh Amendment to the Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." The Eleventh Amendment "embodies the principle of sovereign immunity and prohibits suit by private parties against states in federal courts." *Weller v. Dep't of Soc. Serv's for City of Balt.*, 901 F.2d 387, 397 (4th Cir. 1990).

The Supreme Court has explained: "Although by its terms the Amendment applies only to suits against a State by citizens of another State, our cases have extended the Amendment's applicability to suits by citizens against their own States." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) (collecting cases); *see, e.g.*, *Virginia Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011); *Lapides v. Bd. of Regents of Univ. Sys. of Georgia,* 535 U.S. 613, 618 (2002); *Kimmel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73 (2000). Thus, "the ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Garrett*, 531 U.S. at 363. Put simply, states are generally immune from suit for damages in federal court, absent consent or a valid congressional abrogation of

sovereign immunity.  *See Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 35 (2012); *Va. Office for Prot. & Advocacy*, 563 U.S. at 253-54; *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 903 (2020).

The doctrine of state sovereign immunity from private suit predates the enactment of the Eleventh Amendment.  *See Williams v. Morgan State Univ.*, ___ Fed. App'x ___, 2021 WL 1041699, at *2 (4th Cir. Mar. 18, 2021) (citing *Alden v. Maine*, 527 U.S. 706, 724 (1999); *Hans v. Louisiana*, 134 U.S. 1, 3 (1890)).  However, as the Supreme Court affirmed in *Garrett*, 531 U.S. at 363, among several other decisions, it has construed the Eleventh Amendment to embody the broader principles of state sovereign immunity.[6]

The Fourth Circuit recently echoed this principle in *Pense v. Md. Dep't of Public Safety and Correctional Services*, 926 F.3d 97 (4th Cir. 2019), stating, *id.* at 100: "The Supreme Court 'has drawn on principles of sovereign immunity to construe the Amendment to establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.'" (Quoting *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)); *see Lapides*, 535 U.S. at 618 ("The Eleventh Amendment provides that the 'Judicial power of the United States shall not be construed to extend to any suit . . . commenced or prosecuted against one of the . . . States' by citizens of another State, U.S. Const., Amdt. 11, *and (as interpreted) by its own citizens*.") (emphasis added; ellipses in *Lapides*); *Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244, 248 (4th Cir. 2012).

---

[6] In *Williams*, 2021 WL 1041699, the Fourth Circuit characterized state sovereign immunity as "a broader doctrine" than Eleventh Amendment immunity, and described the text of the Eleventh Amendment as a "rather narrow and precise provision . . . ."  *Id.* at *2.

The defendant refers to Eleventh Amendment immunity and state sovereign immunity interchangeably. *See, e.g.*, ECF 21-1 at 9.  At various points, I shall also refer to state sovereign immunity as Eleventh Amendment immunity, consistent with defendant's usage.

State sovereign immunity bars suit not only against a state, but also against an instrumentality of a state, such as a state agency, sometimes referred to as an "arm of the state." *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *see also Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Pense*, 926 F.3d at 100; *McCray v. Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014); *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013); *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 479 (4th Cir. 2005).  Put another way, sovereign immunity applies when "'the governmental entity is so connected to the State that the legal action against the entity would . . . amount to the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.'" *Lane v. Anderson*, 660 F. App'x 185, 195-96 (4th Cir. 2016) (quoting *Cash v. Granville Cty. Bd. of Educ.*, 242 F.3d 219, 224 (4th Cir. 2001)) (cleaned up).  In contrast, sovereign immunity "does not immunize political subdivisions of the state, such as municipalities and counties, even though such entities might exercise a 'slice of state power.'" *Ram Ditta v. Md. Nat. Capital Park & Planning Comm'n*, 822 F.2d 456, 457 (4th Cir. 1987) (quoting *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979)).

It is undisputed that DPSCS is an arm of the State. Under Md. Code (2017 Repl. Vol.), § 2-101 of the Correctional Services Article, DPSCS is a principal department of Maryland State government.  *See Clarke v. Maryland Dep't of Pub. Safety and Corr. Servs.*, 316 Fed. App'x 279,

11

282 (4th. Cir. 2009) (stating "the Maryland Department of Public Safety and Correctional services is undoubtedly an arm of the state for purposes of § 1983"). Therefore, in the absence of an exception to the Eleventh Amendment bar, DPSCS is not subject to suit in federal court.

The Fourth Circuit has identified three exceptions to the Eleventh Amendment's prohibition of suit against a state or an arm of a state.  In *Lee-Thomas*, 666 F.3d at 249, it said (internal quotations omitted):

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority.  *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) . . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) . . . .  Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.,* 535 U.S. 613, 618 (2002).

None of the exceptions is applicable here.  Title I of the ADA originally contained language abrogating state sovereign immunity in federal court. *See* 42 U.S.C. § 12202. However, the Supreme Court determined in *Garrett*, 531 U.S. 356, that Congress did not validly abrogate sovereign immunity with respect to discrimination claims under Title I of the ADA. *Id.* at 374. The Court said, *id.*: "[T]o authorize private individuals to recover money damages against the States, there must be a pattern of discrimination by the States which violates the Fourteenth Amendment . . . Those requirements are not met here . . ." *See also McCray*, 741 F.3d at 483.

Neither the Supreme Court nor the Fourth Circuit has determined whether Congress abrogated sovereign immunity for retaliation claims under Title V. But, many courts have ruled that where Title V claims are predicated on alleged violations of Title I, the Court's decision in *Garrett* applies. *Demshki v. Monteith*, 255 F.3d 986, 988–89 (9th Cir. 2001) ("Congress may not abrogate the states' Eleventh Amendment immunity from Title V claims."); *see, e.g., Block v. Tex. Bd. of L. Exam'rs,* 952 F.3d 613, 619 (5th Cir. 2020) ("Title V itself does not abrogate a state's

12

sovereign immunity. Instead, a plaintiff may bring a retaliation claim against a state entity only to the extent that the underlying claim of discrimination effectively abrogates sovereign immunity of the particular state."); *Levy v. Kansas Dept. of Social and Rehabilitation Services*, 789 F.3d 1164, 1169 (10th Cir. 2015); *see Bowen v. Maryland, Dep't of Pub. Safety & Corr. Servs.*, RDB-17-1571, 2018 WL 1784463, at *5 (D. Md. Apr. 12, 2018); *Chiesa v. N.Y. State Dep't of Labor*, 638 F. Supp. 2d 316, 323 (N.D.N.Y. 2009). Thus, because Adeyemi's underlying Title I claim is barred by sovereign immunity, so too is his Title V claim.

The second exception is unavailable because the suit does not seek prospective injunctive relief. *See* ECF 1 at 2, 15. Instead, Adeyemi seems to seek only money damages, which he may not recover, absent an exception.

As to the third exception, there is no allegation of a waiver of immunity by the State. To be sure, a state may waive its Eleventh Amendment sovereign immunity and permit suit in federal court. *See Lapides*, 535 U.S. at 618; *Pense*, 926 F.3d at 101; *Lee-Thomas*, 666 F.3d at 249. But, the test to determine whether a State has waived its immunity from suit in federal court is a "stringent" one. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 240 (1985), *superseded on other grounds, as recognized in Lane v. Pena*, 518 U.S. 187, 198 (1996); *see FAA v. Cooper*, 566 U.S. 284, 290 (2012) (stating that a waiver of sovereign immunity must be expressed in statute, not legislative history); *Pense*, 939 F.3d at 101; *Cunningham*, 990 F.3d at 365 (recognizing that a waiver of sovereign immunity must be "unequivocally expressed in statutory text"). Under *Atascadero*, 473 U.S. at 254, a court may find that a state has waived its Eleventh Amendment immunity "only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." *Id.* (internal quotation marks and alteration omitted); *accord Pense*, 926 F.3d at

101; *Lee-Thomas*, 666 F.3d at 250-51.  Maryland has not waived its immunity to suit in federal court as to ADA claims under Title V or Title I.  *See McCray*, 741 F.3d at 483; *see also Constantine*, 411 F.3d at 479.

Moreover, plaintiff's opposition offers no legal argument for why his ADA claim is not barred by the Eleventh Amendment. *See* ECF 15. Therefore, he has waived any opposition to the argument. *See Stenlund v. Marriot Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to [defendant's] argument, Plaintiff concedes the point."); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (same).

Accordingly, Adeyemi's ADA claim shall be dismissed, without prejudice.

### B: Supplemental Jurisdiction

At this juncture, the only remaining claim is the defamation claim that falls under State law. There is no basis for federal question jurisdiction under 28 U.S.C. § 1331.  Nor do the allegations support diversity jurisdiction under 28 U.S.C. § 1332.

Federal courts are courts of limited jurisdiction.  *Home Buyers Warranty Corp. v. Hanna,* 750 F.3d 427, 432 (4th Cir. 2014) (quotation marks omitted) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)).  Thus, a federal district court may adjudicate a case only if it possesses the "power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552 (2005) (internal quotation marks omitted).

Notably, "[a] court is to presume . . . that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole,* 531 F.3d 263, 274 (4th Cir. 2008) (citing *Kokkonen,* 511 U.S. at 377).  Even where no party challenges subject matter jurisdiction, a federal court has "an independent obligation to determine whether subject-matter jurisdiction exists." *Hertz Corp. v. Friend,* 559 U.S. 77, 94 (2010).  And, "if Congress has

not empowered the federal judiciary to hear a matter, then the case must be dismissed." *Hanna,* 750 F.3d at 432.

Congress has conferred jurisdiction on the federal courts in several ways. To provide a federal forum for plaintiffs who seek to vindicate federal rights, Congress has conferred on the district courts original jurisdiction over civil actions that arise under the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 1331; *see also Exxon Mobil Corp.,* 545 U.S. at 552; *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012); *see also* U.S. Constitution Art. III, § 2 ("The Judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made . . ."). This is sometimes called federal question jurisdiction.

In addition, "Congress . . . has granted district courts original jurisdiction in civil actions between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens," so long as the amount in controversy exceeds $75,000. *Exxon Mobil Corp.,* 545 U.S. at 552; *see* 28 U.S.C. § 1332. Article III, § 2 of the Constitution permits a federal court to decide "Controversies . . . between Citizens of different States." *Navy Federal Credit Union v. Ltd. Financial Services LP*, 972 F.3d 344, 352 (4th Cir. 2020). Of relevance here, diversity jurisdiction "requires complete diversity among parties, meaning that the citizenship of *every* plaintiff must be different from the citizenship of *every* defendant." *Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC,* 636 F.3d 101, 103 (4th Cir. 2011) (emphasis added); *see Strawbridge v. Curtiss,* 7 U.S. 267 (1806).

Under the "well-pleaded complaint" rule, facts showing the existence of subject matter jurisdiction "must be affirmatively alleged in the complaint." *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999) (citing *McNutt v. Gen'l Motors Acceptance Corp.*, 298 U.S. 178

(1936)).  Put another way, "before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court."  *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006).  Moreover, the "burden of establishing subject matter jurisdiction is on . . . the party asserting jurisdiction."  *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010); *accord Hertz*, 599 U.S. at 95; *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010).

The citizenship of the litigants is central when diversity jurisdiction is invoked.  *Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 663 (4th Cir. 1998).  Notably, "state citizenship for diversity jurisdiction depends not on residence, but on national citizenship and domicile."  *Id*. (citation omitted).  Generally, "the existence of such citizenship cannot be inferred from allegations of mere residence, standing alone."  *Id*; *see also Robertson v. Cease*, 97 U.S. 646, 648 (1878) ("Citizenship and residence, as often declared by this court, are not synonymous terms.").

In other words, for "purposes of diversity jurisdiction, residency is not sufficient to establish citizenship."  *Johnson v. Advance Am., Cash Advance Ctrs. of S.C., Inc.*, 549 F.3d 932, 937 n.2 (4th Cir. 2008).  Rather, a U.S. national is a citizen of the state where the person has his or her domicile, which "requires physical presence, coupled with an intent to make the State a home."  *Id*.

As noted, "the burden is on the party asserting jurisdiction to demonstrate that jurisdiction does, in fact, exist."  *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).  Here, plaintiff seems to indicate that he is a citizen of Maryland.  *See* ECF 1.  And, DPSCS, as an arm of the State of Maryland, would certainly be considered a citizen of Maryland for purposes of diversity.  Thus, there is not complete diversity between the parties.

In the absence of diversity, the Court must consider 28 U.S.C. § 1367(a), by which a district court is authorized to resolve state law claims under the grant of supplemental jurisdiction. Pursuant to § 1367(c)(3), however, a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."

The Fourth Circuit has recognized that under § 1367(c)(3), "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106 (4th Cir. 1995); *see also ESAB Group, Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012) ("Section 1367(c) recognizes courts' authority to decline to exercise supplemental jurisdiction in limited circumstances, including . . . where the court dismisses the claims over which it has original jurisdiction."); *Hinson v. Northwest Fin. S. Carolina, Inc.*, 239 F.3d 611, 616 (4th Cir. 2001) (stating that, "under the authority of 28 U.S.C. § 1367(c), authorizing a federal court to decline to exercise supplemental jurisdiction, a district court has inherent power to dismiss the case . . . provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met"); *Ramsay v. Sawyer Property Management of Maryland, LLC,* 948 F. Supp. 2d 525, 537 (D. Md. 2013) (declining to exercise supplemental jurisdiction over plaintiff's state law claims after dismissing FDCPA claims); *Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 500 (D. Md. 2005) ("Because the court will dismiss the claims over which it has original jurisdiction, the court will decline to exercise supplemental jurisdiction over the remaining state law claims.").

When exercising this discretion, the Supreme Court has instructed federal courts to "consider and weigh . . . the values of judicial economy, convenience, fairness, and comity in order

to decide whether to exercise jurisdiction over . . . pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). The Court has said: "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

Pursuant to 28 U.S.C. § 1367(c), and the factors set forth in *Carnegie–Mellon*, 484 U.S. at 350, I decline to exercise supplemental jurisdiction with respect to plaintiff's defamation claim.[7] In the absence of subject matter jurisdiction as to the ADA claim, there is no reason for the tort claim to be heard in federal court, rather than in a Maryland State court, which is well equipped to address State law claims. *See, e.g.*, *Medina v. L & M Const., Inc.*, RWT–14–00329, 2014 WL 1658874, at *2 (D. Md. Apr. 23, 2014) ("Finally, as a matter of comity, this Court will remand Medina's state law claims back to state court, as '[n]eedless decisions of state law [by federal courts] should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.'") (alteration in *Medina*) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. at 726); *see also* 13D WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3567.3 n. 72 (3d ed. 2020) (collecting cases).

Because the Court does not have original jurisdiction with respect to plaintiff's defamation claim, plaintiff may file his State-law claim in a Maryland court within thirty days following the entry of an Order of dismissal. As Judge William D. Quarles, Jr. explained in *Johnson v. Frederik Memorial Hosp., Inc.*, WDQ-12-2312, 2013 WL 2149762, at *7 n.26 (D. Md. May 15, 2013):

> 28 U.S.C. § 1367(d) provides that, "[t]he period of limitations for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling

---

[7] In view of my disposition as to the defamation claim, I need not consider defendant's argument that plaintiff was required to comply with the MTCA, S.G. § 12-101, but failed to do so.

18

period." *Accord* Md. Rule 2–101(b) ("[I]f an action is filed in a United States District Court or a court of another state within the period of limitations prescribed by Maryland law and that court enters an order of dismissal . . . because the court declines to exercise jurisdiction . . . an action filed in a circuit court within 30 days after the entry of the order of dismissal shall be treated as timely filed in this State.").

### IV.    Conclusion

For the reasons set forth above, I shall grant the Motion.  This dismissal is without prejudice to plaintiff's right to file his suit in State court within thirty days following the entry of the Order of dismissal, pursuant to 28 U.S.C. § 1367(d).

An Order follows.

Dated:   May 5, 2021                                        _____/s/_____
                                                                      Ellen L. Hollander
                                                                      United States District Judge